**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED MERCHANDISE WHOLESALE INC. and MY IMPORTS USA LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>DIRECT CONTAINERS INC, JIAN YANG ZHANG, MING YANG SOURCING INC, 75 ETHEL REALTY LLC, GLOBAL WIN LLC, XU JING WONG, JIAN MING ZHANG, and GUO SHENG ZHANG,<br><br>Defendants. | Civ. No. 2:18-cv-617-KM-JBC<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the court after plaintiffs were awarded net damages in arbitration. Plaintiffs petition the court to affirm the arbitration award. Defendants seek to vacate the award, arguing that the arbitrator showed evident partiality and the punitive-damages award was unreasonable. For the reasons stated herein, the plaintiffs' motion to confirm the arbitration award is granted, and the defendants' motion to vacate the award is denied.

## I.    BACKGROUND[1]

Plaintiffs United Merchandise Wholesale, Inc. and MY Imports USA LLC arbitrated a dispute with defendants Direct Containers, Inc., Jian Yang Zhang, Ming Yang Sourcing, Inc., 75 Ethel Realty LLC, Global Win, LLC, Xu Jing Wong, Jian Ming Zhang, and Guo Sheng Zhang. The matter comes before this Court on dueling motions to confirm or vacate an arbitration award.

The arbitrator, retired federal District Judge Joel A. Pisano, entered a mixed final award on December 24, 2017. Judge Pisano awarded plaintiffs damages in the amount of $6,727,532 and fees of $378,527.75 (Pet. ¶ 4); he also awarded defendants offsetting damages in the amount of $1,196,449.20. (Pet. ¶ 4). As a result, plaintiffs received a net damages award of $5,909,610.55. On January 2, 2018, respondents filed a letter application to modify the award so as to "clarify" that it did not bind three of them: Kevin Zhang, Xu Jing (a/k/a Judy) Wong, and 75 Ethel Realty, LLC. By letter opinion dated January 11, 2018, Judge Pisano denied that application.

On January 16, 2018, plaintiffs petitioned this court to confirm the arbitration award. (ECF No. 1). Defendants filed a timely motion to vacate the award, arguing that (1) Judge Pisano's partiality required his disqualification or recusal; (2) defendants did not knowingly waive their right to challenge Judge Pisano's partiality; and (3) the punitive damages award was unreasonable or unwarranted. (Def. Opp.). Plaintiffs respond that Judge Pisano was impartial, the defendants waived the right to object regarding partiality, the punitive damages were reasonable, and defendants are judicially estopped from challenging the arbitration because of contrary positions they took in New Jersey state-court proceedings. (ECF Nos. 11, 13).

---

[1]     Certain citations to the record are abbreviated as follows:
"Pet." = Petition to Confirm Arbitration (ECF No. 1-1)
"Def. Opp." = Memorandum of Law in Opposition to Plaintiffs' Motion to Confirm the Arbitration Award and in Support of the Cross Motion to Vacate the Award (ECF No. 8-4)

## II. DISCUSSION

### A. Applicable Law

The Federal Arbitration Act ("FAA") standard for vacating an arbitration decision governs this dispute. "It is well established that absent clear intent to apply a non-FAA standard [for vacating an award], the FAA standard is to be applied." *CD & L Realty LLC v. Owens Ill., Inc.*, 535 F. App'x 201, 204 (3d Cir. 2013) (citing *Ario v. Underwriting Members of Syndicate 53 at Llyods*, 618 F.3d 277, 295 (3d Cir. 2010)). There is no "clear intent" that the parties sought to substitute the FAA's standard of review for vacating an arbitration award with the New Jersey Uniform Arbitration Act's ("NJUAA") standard. Choosing a New Jersey forum, for example, is not deemed a sufficient implied expression of such an intent. *See Ario*, 618 F.3d at 293-95. Nor is there any explicit expression. The relevant contract in this dispute provides:

> *Governing Law.* This Agreement and all performance hereunder or breach hereof, the Parties' relationship in connection herewith, together with any related claims of any type or nature whatsoever, shall be governed by and construed in accordance with the laws of New Jersey, irrespective of conflict of law principals [sic].

(ECF No. 1-3, p. 11). There is a separate section, labeled "*Dispute Resolution*" that provides for arbitration with JAMS. (*Id.*). It does not refer to the NJUAA or the FAA. (*Id.*).

"[T]he parties here must show 'clear intent' to apply the [state] vacatu[r] standards in order to displace those of the FAA.... [I]t is not particularly difficult, for example, to provide that 'any controversy shall be settled by arbitration in accordance with the terms of the [state arbitration statute]." *See Ario*, 618 F.3d at 293. This agreement does not do that. True, it provides that New Jersey law applies to the contract and the parties' relationship. But there is no "clear intent" to substitute New Jersey's vacatur standard for the FAA's standard.

At any rate, there is no relevant distinction between the FAA and NJUAA vacatur standards that would change the outcome. This Court and the New

Jersey Supreme Court have both called the NJAA and FAA "nearly identical." *See, e.g., Int'l Foodsource, LLC v. Grower Direct Nut Co., Inc.*, No. 16-cv-3140, 2016 WL 4150748, at *9 (D.N.J. Aug. 3, 2016); *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 311-12 (N.J. 2014). The NJUAA provides for vacating an award when "the court finds evident partiality by an arbitrator." N.J. Stat. Ann. § 2A:23B-23. This language follows the FAA's language, which provides that an arbitration award may be vacated "where there was evident partiality." 9 U.S.C. § 10(a)(2).

## B. Federal Arbitration Act Vacatur Standard

The validity of an arbitration award is subject to attack on the grounds enumerated in the FAA only—or if enforcement of the award is contrary to public policy. *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983); *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993)). The FAA states, in pertinent part:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> > (1) where the award was procured by corruption, fraud, or undue means;
> >
> > (2) *where there was evident partiality* or corruption in the arbitrators, or either of them;
> >
> > (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> >
> > (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10 (line breaks added; emphasis added). Defendants cite ground 2, "evident partiality" of the arbitrator.

"There is a strong presumption under the [FAA] in favor of enforcing arbitration awards." *Brentwood Med. Assocs.*, 396 F.3d at 241 (internal citation omitted). A court's review, therefore, is exceedingly narrow, and a district court should vacate arbitration awards "only in the rarest case." *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir. 1986). The moving party "bears the burden of proving that the arbitration award at issue should be vacated." *I.B.T., Local 560 ex rel. Holland v. Serv. Concrete, Co.*, No. 11-cv-4529, 2011 WL 4380735, at *3 (D.N.J. Sept. 19, 2011) (citing *Handlev v. Chase Bank*, 387 F. App'x 166, 168 (3d Cir. 2010)). "[A] district court may vacate [an arbitration award] only under exceedingly narrow circumstances." *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)). "[M]indful of the strong federal policy in favor of commercial arbitration, [the court] begin[s] with the presumption that the award is enforceable." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013) (citing *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012)).

### C. Partiality – Alleged Conflicts as of June 2017

Judge Pisano, an experienced jurist, gave the parties a full and fair opportunity to present their evidence and arguments in nine days of hearings in June 2018, and entered a comprehensive, reasoned final award in December 2018. (ECF nos. 3, 1-2)

Defendants claim "evident partiality" based on two alleged ongoing conflicts of interest regarding two attorneys involved in the arbitration, one on petitioner's side and one on respondents' side:

(i) Defendants claim that Judge Pisano should have disqualified or recused himself because of his connection to William T. Walsh, Esq.[2] The plaintiffs were represented as petitioners in the arbitration by attorneys of the McElroy Deutsch firm, including Louis A. Modugno, Esq., and Mr. Walsh. As of June

---

[2]    I take it that the names William T. Walsh Jr. and William T. Walsh III, both of which appear in the record of this motion, signify the same person.

2017, Judge Pisano was of counsel to the law firm Walsh Pizzi O'Reilly Falanga. Liza M. Walsh, Esq., is a founding and Senior Managing Partner of that firm, and an immediate family relation of William T. Walsh.

**(ii)** Defendants also claim that Judge Pisano should have disqualified or recused himself because of his connection to Joseph A. Fischetti, Esq. Fischetti is one of three lawyers from the Lowenstein Sandler firm who represented the defendants/respondents in the arbitration. Mr. Fischetti, it is stated, is married to one of Judge Pisano's former law clerks.[3]

On June 2, 2017, these relationships were disclosed on the record. Counsel for respondents also placed on the record that he had discussed them with his clients and consented to the matter's going forward with Judge Pisano as arbitrator. At any rate, based on these two relationships, defendants have not met their burden of establishing Judge Pisano's "evident partiality."

To vacate an award due to evident partiality under Section 10(a)(2), the court must find more than a mere appearance of bias. *See Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251-53 (3d Cir. 2013) (holding that the FAA's evident-partiality standard requires a stronger showing for an arbitrator than the judicial "appearance of bias" standard). "An arbitrator is evidently partial only if a reasonable person would have to conclude that she was partial to one side.... The conclusion of bias must be ineluctable, the favorable treatment unilateral." *Id.* at 253. This standard is higher than the partiality standard applied to federal judges:

> The Federal Arbitration Act requires a party to show "evident partiality." 9 U.S.C. § 10(a)(2). The word "evident" suggests that the statute requires more than a vague appearance of bias. Rather, the arbitrator's bias must be sufficiently obvious that a reasonable person would easily recognize it. By contrast, the judicial standard

---

[3]     I take judicial notice that Judge Pisano left the bench for private practice in 2015.

> requires recusal if a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This language suggests that the judicial inquiry focuses on appearances—"not on whether the judge actually harbored subjective bias." *In re Antar*, 71 F.3d 97, 101 (3d Cir. 1995).

*Id.* Again, the moving parties bear the burden of proving that the arbitration award should be vacated. *See Handlev v. Chase Bank*, 387 F. App'x 166, 168 (3d Cir. 2010).

Judge Pisano's contemporaneous relationships with lawyers from plaintiffs' and defendants' arbitration teams are routine. Indeed, they are typical of those among professional colleagues at the bar of this State. They do not support a finding of bias. The Third Circuit has held that the "[FAA] requires more than suppositions based on mutual familiarity." *Freeman*, 709 F.3d at 255-56; *see id.* (holding that an arbitrator's failure to disclose a prior professional relationship did not rise to the level of bias under section 10(a)(2)); *see also Global Liquidity Partners, LLC v. Wegher*, No. 16-cv-2439, 2016 WL 7030429, at *4 (D.N.J. Nov. 30, 2016).

Courts have held that similar types of personal and professional relationships between an arbitrator and a party's counsel do not constitute evident partiality. In *Freeman*, the Third Circuit upheld an arbitration award where the arbitrator received campaign donations from the defendant's minority owner and co-taught a labor law seminar with the senior employment attorney for that minority owner. 709 F.3d at 245, 255-56. Similarly, a New Jersey state court, applying New Jersey law, upheld an arbitration award where the arbitrator failed to disclose that plaintiff's counsel had served as his law clerk. *Hetherington v. Molinaro*, No. FM-16-1403-11, 2015 WL 2456690, at *1-5 (N.J. Super. Ct. App. Div. May 26, 2015). In *Uhl v. Komatsu Forklift Co., Ltd.*, the Sixth Circuit found that an arbitrator's nondisclosure that he worked as co-counsel with one of the party's attorneys did not warrant vacating the arbitration award. 512 F.3d 294, 307 (6th Cir. 2008).

To compel a finding of "evident partiality," the relationship must be of the sort that "an arbitrator would reasonably regard as creating an impression of possible bias." *In re Andros Compania Maritima, S.A.*, 579 F.2d 691, 701 (2d Cir. 1978). Some "undisclosed relationships ... are too insubstantial to warrant vacating an award." *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 152 (1968) (White, J., concurring). In determining whether partiality exists regarding an arbitrator's relationship, courts have considered factors such as: "(1) the financial interest the arbitrator has in the proceeding; (2) the directness of the alleged relationship between the arbitrator and a party to the arbitration; (3) and the timing of the relationship with respect to the arbitration proceeding." *See Toroyan v. Barrett*, 495 F. Supp. 2d 346, 351-52 (S.D.N.Y. 2007).

Defendants have not shown that while this arbitration was pending, there was any financial or business interest connecting Judge Pisano to Mr. Walsh or Mr. Fischetti. The alleged relationships are indirect. Nothing about the timing suggests evident partiality. Defendants have not met their burden of proving that the two relationships stated above would reasonably have caused Judge Pisano to be partial during this arbitration.

I add that the case law cited above, permissive as it is, relates to *undisclosed* relationships. In an abundance of caution, Judge Pisano disclosed his connections to Mr. Walsh and Mr. Fischetti during a lengthy colloquy on June 12, 2017. (Pet. 3, 5-6; Def. Opp. 3-4). Counsel for plaintiffs and defendants were made aware of these connections, made no objection, and indeed appear to have affirmatively waived any objection. (Pet. 3, 5-6; Def. Opp. 3-4).

At any rate, as stated above, these two alleged conflicts, even taken at face value, are insufficient to undermine the award. I therefore do not decide the redundant issue of whether defendants also waived the alleged conflict by failing to make any objection until after Judge Pisano had rendered an adverse award, or are estopped by their positions in other litigation.

8

### C. Mr. Walsh's joining the Walsh Pizzi firm

Defendants assert a third alleged conflict of interest. At some point, defendants say, William T. Walsh left McElroy Deutsch and joined the Walsh Pizzi firm as an associate. No specific date is given, but defendants submit a printout of a web page stating that Walsh left McElroy Deutsch in the month of January, 2018. It is stated or implied that he and Judge Pisano must both have been affiliated with the Walsh Pizzi firm—not when Judge Pisano entered the arbitration award in December 2017, but later, when he denied three defendants' motion to modify the award on January 11, 2018. (Def. Opp. 7; ECF No. 7-17).

I assume arguendo the truth of the allegation that Mr. Walsh joined the Walsh Pizzi firm in January. Neither side has clarified the date, however, hampering the Court's analysis.

One possibility is that Mr. Walsh joined that firm on January 12 or later, *i.e.*, after Judge Pisano's final denial of the motion to modify the award. There is some circumstantial support for that scenario: Judge Pisano's January 11, 2018 letter decision, for example, is addressed to Mr. Modugno and Mr. Walsh at the McElroy Deutsch firm address. On this scenario—Walsh's joining the firm after all proceedings were finished—no significant issue would be presented.

The other possible scenario is that Mr. Walsh joined the Williams Pizzi firm in the period January 1–11, 2018. Even if this scenario is the correct one, it does not give rise to an inference of partiality. The period of overlap—if there was one—was a matter of days. The only thing that happened during that period was Judge Pisano's routine denial of three defendants' motion to exclude themselves from the scope of the arbitration award already entered against them. That brief decision was based on rulings already made and evidence already received; it required no further proceedings. Mr. Walsh co-represented the plaintiffs/petitioners, not the defendants/respondents, so he cannot have revealed defendants' client confidences. And when he left McElroy Deutsch he

9

surely ceased to represent the plaintiffs, who continued (and continue) to be represented by Mr. Modugno and McElroy Deutsch.

On these facts, I cannot find that this third claim of a conflict of interest gives rise to a reasonable inference that Judge Pisano was anything less than impartial.

### D. Punitive Damages

The punitive-damages award will be upheld. Federal courts review arbitration awards on a standard that "could be generously described only as extremely deferential." *Bellantuono v. ICAP Secs. USA, LLC*, 557 F. App'x 168, 173 (3d Cir. 2014) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 372 (3d Cir. 2003)). "[Courts] begin with the presumption that the award is enforceable." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012).

The FAA's central purpose is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). If contracting parties agree to include punitive damages as a potential remedy, the FAA ensures that the agreement will be enforced—even if a rule of state law would otherwise preclude such damages. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 61-64 (1995).

Defendants posit that this court should engage in the punitive-damages analysis set forth in *BMW v. Gore*. (Def. Opp. 15). There, the Supreme Court established three guideposts to determine whether a punitive-damages award *at trial* was grossly excessive and thus in violation of the Due Process Clause: (1) the degree of reprehensibility of the defendant's actions; (2) the disparity between the harm or potential harm suffered by the plaintiff and its punitive-damages award; and (3) the difference between the punitive-damages award and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996).

*BMW*, however, involved appellate review of a trial verdict. Defendants cite no authority for the proposition that the *Gore* standard applies in the very

10

different and far more deferential context of review of an arbitration award. At any rate, defendants are essentially making a factual argument: that the arbitrator lacked sufficient evidence that Jimmy Zhang, Judy Wong, Guo Zhang, and the corporate entities knowingly acquiesced in or ratified the alleged conduct. (Def. Opp. 15). "[C]ourts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Vitarroz Corp. v. G. Willi Food Int'l Ltd.*, 637 F. Supp. 2d 238, 243 (D.N.J. 2009). The scope of review of an arbitration award, as outlined above, is far more limited and deferential. And, even taking the *BMW* standard at face value, defendants make no arguments to suggest that the punitive-damages award was disproportionate to the compensatory damages or awards in similar cases.

### E. Other Arguments

Since the cited relationships do not give rise to "evident partiality" and defendants have not shown good reason for vacating the punitive-damages award, I do not reach plaintiffs' other arguments.

### III. CONCLUSION

For the foregoing reasons, the plaintiffs' petition to confirm the arbitration award is granted. Defendants' motion to vacate the arbitration award is denied.

An appropriate order accompanies this opinion.

Dated: July 26, 2018

**KEVIN MCNULTY**
**United States District Judge**

11